## WILLIAM BUTCHER *vs.* THE PROVIDENCE GAS COMPANY

Plants in the plaintiff's greenhouse, connected with the public sewers, were injured by illuminating gas which escaped from the mains of the gas company, the defendant, into the sewers, and thence found its way to the greenhouses.    It appeared that when the sewers were built by the city of Providence the earth was not properly packed, and the subsequent settling opened a leak in the gas-pipes, which caused the injury complained of.    In an action against the gas company:

*Held*, that being in charge of a dangerous material, the gas company was bound both itself to exercise due care proportioned to the risk, and also to use similar care in preventing careless interference with its pipes by others.    The company could not prevent the construction of the sewer, but was bound to see that the earth was properly pu

─────────────────────

[1] And see *State* v. *Goyette*, 11 R. I. 592.

back; that the pipes were properly supported, and that all needful repairs were made with reasonable speed.

*Held,* further, that the jury was to decide whether the company had exercised such care.

*Held,* further, that evidence of the presence of gas in other greenhouses connected with the same sewers was properly admitted.

DEFENDANT'S petition for a new trial.

*July* 13, 1878.   POTTER, J.   The plaintiff sues to recover damages for injuries to his plants in a greenhouse, caused by the defendant's neglect in allowing illuminating gas to escape from their pipes into the city sewers and drains, and thence into the plaintiff's greenhouse.

After verdict for the plaintiff the defendant moves for a new trial, on the ground that the verdict was against the evidence and also for certain misrulings.

The contention on the part of the defendant is that there was no negligence on their part, and that the escape of gas was from causes over which they had no control; namely, the negligence of the officers of the city.

The judge charged the jury substantially that the questions before them were whether the gas did escape from the defendant's mains, and whether that caused the trouble; and, if so, whether it escaped through defendant's negligence; that the defendant was bound to exercise reasonable care, and the degree of care depended on the degree of danger; that it increased with the degree of danger if they had a dangerous element under their control; that the defendant contended it was the fault of the city, whose officers, in putting in a sewer, had not packed back the dirt properly, and so the settling of the dirt had broken the defendant's pipe; that if the city was liable it did not follow the defendant was excused; but if others were at work around the pipes a new duty was imposed on it to guard against the want of care in others, and to use proper care in remedying defects caused by such want of care; and that when the defect was discovered the defendant should have adopted reasonable remedies to prevent injury; that if the injury resulted from the joint carelessness of plaintiff and defendant, plaintiff could not recover; that the defendant contended the plaintiff might have prevented the damage by using a proper trap; that while that might have been proper in guarding against sewer gas, it was for the jury to

consider whether he ought to expect to find, or be bound to guard against illuminating gas in a common sewer, and whether his not providing such a trap showed want of care on his part; that if, as was claimed, other causes, such as furnace gas, coöperated in producing the injury, that would not excuse the defendant from liability for so much of the injury as the jury found was due to the negligent escape of gas.

The defendant, in its brief and argument, makes several points as to what could be negligence on the part of the defendant; *e. g.* whether they were bound or not to have some one constantly to watch the city work while it was in progress; that the defendant did have a competent person on watch; that the city's work was done by a man competent for the business, and who swears that the sewer and catch-basin were properly put in.

We think these matters were all properly left to the jury, and we cannot see that the verdict is against the weight of evidence.

The evidence as to the presence of the gas in other greenhouses was properly admitted. Evidence was put in to show that Smith's greenhouses were connected with the same sewers.

The evidence of Mr. Shedd, that it was possible for gas to escape in the way plaintiff claimed it did, was also properly admitted in rebuttal.

It is objected that certain evidence as to the proper construction of sewers and the contract of the city with the contractors was ruled out; that evidence that the defendant had complained to the water commissioners as to the mode in which they were constructing the sewers, and the fact that they, the agents of the city, refused to allow any one to interfere, was ruled out. The complaint in this case was not that the sewer was not properly built, but that the dirt, when put back, was not properly packed. And the contract of the city with the contractors could not alter the fact; it was not a question whether the city intended to do an injury, but a question of negligence on the part of the defendant in not properly guarding against the negligence of the city's officers.

That certain evidence was rejected going to show the plaintiff had no right to connect with the city sewer. The court had ruled that the right would be presumed unless the contrary was shown, and the evidence offered was a vote of the city council and some

evidence of custom, neither of which could alter the rights of the parties.

• The instruction requested by the defendant, that the legal construction of its grant from the State was that the defendant had a right of property in the streets for the use of its pipes, and was not bound to inspect the pipes nor to remove them to prevent injury, unless the city gave it notice that the gas-pipes were in their way, and that it was unreasonable exactitude to require the defendant to have a person present at all times when the city was at work near its pipes, &c., were very properly refused, the latter being a matter for the jury under the instructions given as to the degree of care the defendant was bound to use.

We cannot find in the rulings or the evidence anything to justify a new trial. The defendant, in managing a dangerous element, was bound not only to due care on the part of itself and its servants, but also to due care in preventing injury from the careless or wrongful meddling with its works on the part of others. They could not interfere with or prevent the city from building a sewer; but they had a right to and were bound to see that in restoring the earth to its place, their own pipes were properly supported, and if injured, to see that the injury was repaired as soon as it could reasonably be done.

*Petition dismissed.*

*James Tillinghast & J. A. Gardner,* for plaintiff.
*Charles S. Bradley, & Charles P. Robinson,* for defendant.